IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. MJM-21-298 |
| | * | |
| OSMAN MALIK SESAY, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY OF BRIAN LUETTKE

Pursuant to Federal Rules of Evidence 401, 403, 702, and 704, the Government moves to exclude Brian Luettke from testifying as a rebuttal expert witness at trial. The Government intends to call Eve Eisenbise to testify that the machinegun conversion device charged in Counts Six and Seven of the third superseding indictment constitutes a "machinegun" under 26 U.S.C. § 5845(b). The Government expects Mr. Luettke to testify that the device does not meet the statutory definition but, as outlined below, that anticipated opinion is based on an erroneous understanding of what the statutory definition requires and is not based on any reliable methodology. Further, any testimony from Mr. Luettke about the Defendant's knowledge of whether the machinegun conversion device converted a firearm into an automatic weapon is improper and will be irrelevant, confusing, and unhelpful for the jury as that aspect of the Defendant's knowledge is not an element of any of the charged crimes.

## BACKGROUND

The Defendant is charged in a seven-count third superseding indictment with:

1. Conspiracy to distribute and possess with intent to distribute a controlled substance, under 21 U.S.C. § 846, from November 13, 2020-July 16, 2021;

1

2. Maintaining a drug involved premise, under 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, from November 13, 2020-July 16, 2021;

3. Possession of a firearm in furtherance of a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A)(i), on April 29, 2021;

4. Felon in possession of a firearm and ammunition, under 18 U.S.C. § 922(g)(1), on April 29, 2021;

5. Possession with intent to distribute a controlled substance, under 21 U.S.C. § 841(a)(1) and (b)(1)(D), on July 16, 2021;

6. Possession of a firearm in furtherance of a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A)(i) and (c)(1)(B)(ii), on July 16, 2021; and

7. Felon in possession of a firearm and ammunition, under 18 U.S.C. § 922(g)(1), on July 16, 2021.

ECF No. 140.

On January 24, 2023, the Government produced an expert report written by Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Firearms & Ammunition Technology Division ("FATD") Special Agent Eve Eisenbise. Ex. A, Eisenbise Report. On February 14, 2025, the Government disclosed to the defense that it intends to proffer Ms. Eisenbise as an firearms expert.[1] Ex. B, Government's 2/14/25 Expert Disclosure. Ms. Eisenbise served as the Chief of the Field Response Branch-Central within the FATD from November 2022 to March 2024. Ex. C, Eve E. Eisenbise CV. She served as a Firearms Enforcement Officer ("FEO") for over a decade. *Id.* In this role, she conducted technical examinations and evaluations of firearms, ammunition, and silencers. *Id.* She has examined hundreds of firearms, silencers, rounds of ammunition, and other firearm-related parts for the purpose of determining the manufacturer, model, caliber/gauge, serial number, place of manufacture, function, design, and status as related to the National Firearms Act and Federal firearms laws. *Id.*

---

[1] Ms. Eisenbise recently retired from ATF within the last week.

At trial, Ms. Eisenbise will testify about the findings of her report, dated September 28, 2021, regarding the qualifications of the firearms and machinegun conversion devices in this case. Ex. B, Eisenbise Report. Relevant to this motion, Ms. Eisenbise examined a Glock, Model 23, .40 S&W caliber firearm (named Exhibit 001 in her report), a machinegun conversion device (Exhibit 001A, which was assembled onto Exhibit 001), a Glock, model 26Gen 5 9x19 mm caliber firearm (Exhibit 008), and a machinegun conversion device (Exhibit 008A which was assembled onto Exhibit 008). *Id.* Only Exhibit 001 with Exhibit 001A attached was charged as a machinegun in Counts Six and Seven of the third superseding indictment. Exhibit 008 was charged as a firearm in Counts Three and Four of the third superseding indictment.

The Government anticipates that Ms. Eisenbise will testify about how test firing a firearm, and the results of a test fire, is not determinative of whether a firearm or machinegun conversion device qualifies as a "firearm" or "machinegun" under the Gun Control Act and the National Firearms Act. She will testify as to the various shapes, sizes, and forms of machinegun conversion devices and how a variety of devices can constitute a "machinegun" under the Gun Control Act and the National Firearms Act.

On March 4, 2025, defense counsel noticed Mr. Brian Luettke as a rebuttal expert to Ms. Eisenbise. *See* Ex. D, Luettke Expert Disclosure, Ex. E, Luettke Report, Ex. F, Luettke CV. According to his CV, expert disclosure, and report, Mr. Luettke operates Luettke Firearms Consulting, Inc. after retiring from ATF as a Special Agent for over two decades. Ex. E, Luettke Report at 1. As a special agent, Mr. Luettke taught interstate nexus training classes and the Gun Control Act and National Firearms Act to new employees. *Id.* Before leaving ATF, Mr. Luettke

3

was the Chief of the Advanced Firearms and Interstate Nexus Branch with the FATD in West Virginia.[2]

On December 6, 2024, Mr. Luettke examined the firearms and machine gun conversion devices collected in this case. Based on his report, Mr. Luettke's proposed testimony consists of (1) reviewing Ms. Eisenbise's examination methods and report conclusion; (2) his visual inspection of the machinegun conversion devices and comparison of the machinegun conversion devices with a metal machinegun conversion device; (3) speculation that any person that shot the firearms before law enforcement would have shot them as semi-automatic pistols; (4) an opinion that the defendant did not have the requisite knowledge that the machinegun conversion devices functioned as machineguns and; (5) a conclusion, without explanation or application of the statutory definition, that the machinegun conversion devices are not machineguns as defined in 26 U.S.C. § 5845(b). At best, the Government surmises that Mr. Luettke may testify that his conclusion is based on his observations that the firearms did not function as machineguns when initially test fired, that the devices were damaged, and that the dimensions were, in his view, "incorrect."

**ARGUMENT**

Mr. Luettke should be excluded from testifying pursuant to Federal Rules of Evidence 401, 403, 702, and 704 because:

---

[2] While Mr. Luettke may be an expert in interstate nexus determinations, based on his resume (and unreliable methodology, discussed herein), his expertise in firearm identification and machinegun classifications is less clear. If the Court denies the Government's instant motion, the Government respectfully reserves the right to examine Mr. Luettke's credentials during expert voir dire.

(1) test firing is not a prerequisite to determining whether a machinegun conversion device constitutes a "machinegun" under 26 U.S.C. § 5845(b) and any such testimony will be irrelevant, unhelpful for the jury, and based on the inaccurate principle that a test fire is required;

(2) Mr. Luettke's own examination of the machinegun conversion devices, which consisted of him measuring them with a ruler and comparing the size to other machinegun conversion devices, is an unreliable method of examination because the size of a machinegun conversion device is not determinative of whether it constitutes a "machinegun" under the statute;

(3) Mr. Luettke improperly (and erroneously) speculates as to the likelihood that any person who shot the firearms, before law enforcement, shot them as semi-automatic pistols;

(4) Mr. Luettke gives an opinion as to defendant's *mens rea*, in violation of Federal Rule of Evidence 704(b), and in any event, the indictment did not charge a crime that requires the defendant know that the machinegun conversion devices functioned as machineguns, so any testimony about the defendant's knowledge will be irrelevant, confusing, and unhelpful for the jury; and

(5) the remainder of Mr. Luettke's report/anticipated testimony is his critique of Ms. Eisenbise's examination methods which is best reserved for cross examination.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*United States v. Wiggins*, 708 F. App'x 105, 109 (4th Cir. 2017); Fed. R. Evid. 702. The "touchstone of the rule is whether the testimony will assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

The trial court's task is to ensure the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court provides five non-exhaustive factors a court may weigh in making this assessment: (1) whether a theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique or theory has gained "general acceptance" in the relevant scientific or expert community. *Id*. at 592–94. "[I]t is well established that experts may base their opinions on experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999).

"The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 594-95).

II. **Test Firing is not a Prerequisite to Determining Whether a Machinegun Conversion Device Constitutes a "Machinegun" under 26 U.S.C. § 5845(b)**

Based on his report, the Government expects Mr. Luettke to testify, that since Exhibit 001A did not "function as a machinegun for the Maryland State Police or reliably for FEO Eisenbise," that it is not a machinegun as defined by 26 U.S.C. § 5845(b). *See* Ex. E, Luettke Report p. 5. Mr. Luettke's report also makes the same assertions regarding Exhibit 008A. *Id.*

Critically, test firing is not a prerequisite to determining whether a machinegun conversion device constitutes a "machinegun" under 26 U.S.C. § 5845(b). *See* 26 U.S.C. § 5845(b). The first segment of the "machinegun" definition recognizes "any weapon which shoots, ***is designed to shoot, or can be readily restored to shoot***, automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* (emphasis added). The second segment of the definition also includes "the frame or receiver of any such weapon, any part ***designed and intended*** solely and exclusively, or combination of parts ***designed and intended***, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." *Id.* (emphasis added).

Thus, in and of themselves, Exhibits 001A and 008A qualify as "machineguns" as they are parts "designed and intended, for use in converting a weapon into a machinegun." *See* 26 U.S.C. § 5845(b). The statutory definition focuses on what the part is designed and intended to do. *Id.* In her report Ms. Eisenbise includes the United States Patent for the machine gun conversion device which describes the device as a "system for selecting between automatic and semi-automatic operation of a gun." Ex. A, Eisenbise Report, at U.S. Patent Attachment. Ms. Eisenbise's report notes how the device is "designed to replace the original slide back-plate" of a Glock with a "leg" that has been attached to the back plate. *Id.* at 3. The "leg" pushes the "trigger bar down and out of engagement with the firing pin as the slide closes, thereby allowing the firing pin to travel forward and fire a round of ammunition." *Id.* This "enables a Glock-type pistol to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* This description illustrates what the device was designed to do and how such design

modifies a Glock-type pistol. Such design is what makes the device a "machinegun" under the statutory definition. *Id.* at 3, 8.

Test firing a firearm with a machinegun conversion device attached is, as described by Ms. Eisenbise, merely a demonstration. *Id.* at 4 ("To demonstrate Exhibit 001 will expel a projectile by the action of an explosive and that 001A is a combination of parts designed and intended for use in converting a weapon into a machinegun….") The results of the test firing do not change the fact that the machinegun conversion device meets the statutory definition of a "machinegun" because it was designed to convert the weapon. *See United States v. Griley*, 814 F.2d 967, 975 (4th Cir. 1987) (machinegun found broken into pieces in an attic was still a machinegun under 26 U.S.C. § 5845(b) as it was "capable of being restored to working order" and fell "under the statutory definition.")

Notably, Mr. Luettke's report interprets supergluing the device as an attempt at making it a "***functioning*** machinegun conversion device." Ex. E, Luettke Report at 2. He seemingly recognizes that the device is still a machinegun conversion device just not fully operational. In that same vein, Mr. Luettke characterizes Exhibit 001A as not functioning "***reliably***." That qualifier does not mean that it did not function at all and, most importantly, it does not mean the device does not meet the statutory definition of a "machinegun." *Id.* at 5.

Further, Exhibit 001 *did* successfully test fire automatically with Exhibit 001A attached. *See* Ex. A, Eisenbise Report at 4. When Ms. Eisenbise inserted two rounds of ammunition into the magazine and squeezed the trigger, Exhibit 001 fired both rounds automatically. *Id.* In a subsequent attempt with three rounds, it expelled one round. *Id.*

Mr. Luettke should be excluded from testifying that, because Exhibit 001 with 001A attached and Exhibit 008 with 008A attached did not reliably fire rounds automatically, then

Exhibits 001A and 008A are not machineguns under 26 U.S.C. § 5845(b). The statutory definition does not require that the device function reliably, so the testimony is irrelevant under FRE 401. Because it is irrelevant, it is unhelpful for the jury under FRE 702. Finally, characterizing consistent successful test fires as a statutory requirement for 26 U.S.C. § 5845(b) is not accurate and, therefore, not a reliable principle of firearm examination and classification. Such characterization should also be excluded under that basis under FRE 702.

### III. Mr. Luettke's Conclusion is Not Based in a Reliable Methodology or Practice

Mr. Luettke's report largely critiques the methods and practice of Ms. Eisenbise. The only independent work Mr. Luettke performed was using a ruler to compare the size of Exhibits 001A and 008A with another machinegun conversion device. He then unjustifiably extrapolates—from the less than 0.1-inch size difference between the items—that they are not a machineguns as defined by 26 U.S.C. § 5845(b). But machinegun conversion devices come in various sizes and levels of sophistication. They can be made from various materials such as plastic, metal, and even plexiglass. The "leg" of a device can vary in size, length, and thickness. So long as the device was designed and intended to fit into the recess of a firearm back plate so it can push down the trigger bar allowing the firing pin to travel forward and fire a round of ammunition then it constitutes a machinegun under the statute.

Thus, simply measuring the size of a machinegun conversion device is not a reliable method of determination. Mr. Luettke provides no basis for his opinion that the miniscule differences in measurements between Defendant's machinegun conversion devices and Mr. Luettke's example machinegun conversion device mean that the former were not "designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). Nor can he, because Exhibit 001 with 001A attached did in fact fire automatically after it was "readily restored"

9

by Ms. Eisenbise. *Id.* Any deduction Mr. Luettke developed from the size of Exhibit 001A and Exhibit 008A should be excluded under FRE 401 and 702.

### IV. Mr. Luettke Improperly Speculates About Whether the Firearms Previously Operated as Semi-Automatic Pistols

In his report, Mr. Luettke's states that because the relevant firearms did not test fire automatically by the Maryland State Police, "its highly probable that any person who may have shot these same pistols before law enforcement did, shot them in the same way and as semi-automatic pistols." Ex. E, Luettke Report at 10. This opinion should be excluded for several reasons.

First, this opinion is pure speculation, and not based on Mr. Luettke's proffered specialized knowledge. Therefore, it is not reliable and should be excluded under Rule 702. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (With respect to reliability, the district court must ensure that the proffered expert opinion is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).

Second, even as far as speculation goes Mr. Luettke's opinion is unreliable. The machinegun conversion devices in this case were made of plastic. These types of plastic machinegun conversion devices tend to break easily *after they have been fired*. Indeed, after Ms. Eisenbise applied superglue to Exhibit 001A it functioned as a machinegun before it broke again. Ex. E, Eisenbise Report at 4. Therefore, contrary to Mr. Luettke's opinion, it is highly probable that whoever shot the pistols prior to law enforcement, shot them in fully automatic mode, which led to the plastic machinegun conversion devices being in the damaged condition they were in when recovered by law enforcement.

Finally, as discussed below, the Government's position and the weight of circuit court authority is that Defendant's knowledge that the firearms were machineguns is not an element of the 18 U.S.C. § 924(c) charge. Accordingly, Mr. Luettke's speculation about how the pistols may have fired prior to law enforcement recovering them is irrelevant and has a high risk of confusing the issues, and therefore should be excluded under Rules 401, 403, and 702.

V. **Testimony About the Defendant's Knowledge of the Machinegun Conversion Device Features Violates Rule 704(b) and Is Irrelevant, Confusing, and Unhelpful to the Jury**

Mr. Luettke's expert report includes an impermissible opinion on Defendant's *mens rea*. Mr. Luettke's report cites the Supreme Court case *Staples v. United States*, 511 U.S. 600 (1994) in which the petitioner was indicted for unlawful possession of an unregistered machinegun in violation of 26 U.S.C § 5861. Ex. E, Luettke Report at 10. Mr. Luettke goes on to say that he did not "read any report showing Mr. Sesay 'knew of the features…that brought it within the scope of the Act.'" *Id.* This testimony should be excluded under 704(b), or in the alternative under Rules 401, 403, and 702.

To begin, the parties disagree on whether the Government needs to prove Defendant knew that the firearm charged in Count Six was a machinegun as an element of 18 U.S.C. § 924 (c)(1)(A)(i), (c)(1)(B)(ii). The Government's position is that it is not required. Rather, the required elements are that (1) the defendant committed a crime of violence or drug trafficking crime for which he might be prosecuted in a court of the United States; (2) the defendant knowingly possessed a firearm in furtherance of the commission of the crime of violence or drug trafficking crime and; (3) the firearm was a machinegun as the term is defined under 26 U.S.C. 5845(b). *See* 2 Modern Federal Jury Instructions-Criminal P 35.14 (2025); *see also United States v. Burwell*, 690 F.3d 500 (D.C. Cir. 2012) (disagreeing "on all counts" that the Government needed to establish the defendant's knowledge that the AK-47 he carried was capable of firing automatically to sustain

11

a 18 U.S.C. § 924(c) conviction); *United States v. Haile*, 685 F.3d 1211, 1218 (11th Cir. 2012) (controlling law for 18 U.S.C. § 924(c)(1)(B)(ii) is that, "proof of particularized knowledge of the weapon characteristics is not required") (internal citation and quotation omitted)).

The Government understands that the defense's position is that knowledge of the machinegun is a required element for the § 924(c) charge. *See United States v. Pérez-Greaux*, 83 F.4th 1, 12-23 (1st Cir. 2023) (holding that the Government needed to prove that the defendant had "knowledge that the firearm in question had the characteristics of a machinegun in order to find him guilty of § 924(c)(1)(B)); *Ruiz v. United States*, 146 F. Supp. 3d 726, 732 (D. Md. 2015) ("[I]n a prosecution under § 924(c)(1)(B)(ii), proof of *mens rea* is required. . . ."). Either way, Mr. Luettke's testimony on this point should be excluded. If knowledge of the machinegun is an element, Mr. Luettke's opinion is improper under Federal Rule of Evidence 704(b). If knowledge of the machinegun is not an element, Mr. Luettke's testimony should be excluded under Rules 401, 403, and 702 as irrelevant, confusing, unhelpful to the jury, and not the subject of Mr. Luettke's expertise.

Rule 704(b) provides, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." To the extent knowledge of the machinegun is an element of the offense, Mr. Luettke's testimony that there is no evidence he is aware of that Defendant had knowledge of the machinegun is plainly an improper opinion about the Defendant's mental state under Rule 704(b).

To the extent knowledge of the machinegun is not an element of the offense, Mr. Luettke's testimony that knowledge is a requirement under *Staples* for charges under 26 U.S.C. § 5861 should be excluded under Rules 401, 403, and 702 for several reasons. First, any testimony from

Mr. Luettke on case law or the elements of the charged crimes is outside the bounds of his expertise and should be excluded.

Second, if knowledge of the machinegun is not an element, Mr. Luettke's testimony about the Defendant's knowledge of whether the machinegun conversion device converted the Glock into an automatic firearm is wholly irrelevant and immaterial under FRE 401. Any mention of the Defendant's knowledge would also confuse the jury with a concept that is not at issue in the case and should be excluded under FRE 403. Moreover, Defendant's testimony about *Staples* and the elements of 26 U.S.C. § 5861 are irrelevant and confusing because that statute is not charged in this case. By default, any irrelevant and immaterial testimony would also constitute unhelpful testimony for the jury under Rule 702.

Third, Mr. Luettke's proposed testimony on *Staples* and the Defendant's knowledge "presents a legal conclusion informing the jury about how it should apply the law, which is prohibited." *United States v. Mallory*, 988 F.3d 730, 741–42 (4th Cir. 2021) (*citing United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) ("Expert testimony on an ultimate issue is therefore excludable under Rule 702 if it does not aid the jury. . . . Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination.")). Thus, Mr. Luettke's testimony on Defendant's knowledge of the machinegun should be exclude under Rule 704(b), or in the alternative under Rules 401, 403, and 702.

### VI. The Remainder of Mr. Luettke's Opinion—critiques of Ms. Eisenbise's work—is Best Reserved for Cross Examination

Without any reliable methods substantiating his findings and report conclusion, the rest of Mr. Luettke's report is his critiques on Ms. Eisenbise's examination methodology. Such commentary is not an expert opinion or conclusion and does not qualify under 702. Mr. Luettke's commentary on Maryland State Police's initial handling of the machinegun conversion devices is

13

also not an expert opinion based in any reliable methodology or standards. *See* Ex. E, Luettke Report at 2 ("I find it interesting the two alleged machineguns in this case did not function as machineguns when taken into evidence by law enforcement and initially test fired.")

If defense counsel wishes to scrutinize Ms. Eisenbise on how she concluded that Exhibits 001A and 008A met the statutory definition of a machinegun they may do so during cross examination. If they wish to scrutinize the steps she took to demonstrate whether the devices functioned as machinegun conversion devices, they may do so during cross examination. With no other admissible conclusions of his own, Mr. Luettke should not be permitted to testify as an expert solely to provide commentary on Ms. Eisenbise's report.

## CONCLUSION

The Court should grant the Government's motion to exclude the testimony of Mr. Brian Luettke.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: *Brooke Y. Oki*
Brooke Oki
Patrick Kibbe
Assistant United States Attorneys