IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. MJM-21-298 |
| | * | |
| OSMAN MALIK SESAY, | * | |
| | * | |
| Defendant | * | |
| | * | |

*******

## GOVERNMENT'S REPLY TO THE DEFENDANT'S RESPONSE REGARDING THE MOTION TO EXCLUDE TESTIMONY OF BRIAN LUETTKE

Mr. Luettke should not be permitted to testify in this trial because once his improper and unreliable anticipated testimony is excluded, what remains will be duplicative of Ms. Eisenbise's anticipated testimony and unhelpful for the jury. The Defendant had not met his burden of admissibility, by the preponderance of the evidence, under Federal Rule of Evidence 702. *See* Fed. R. Evid. 702, Advisory Committee Notes (2023 Amended) ("[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.")

### A. Testimony From Mr. Luettke About Test Firing Should Be Excluded

The Government is not, as the Defendant suggests, seeking to preclude the jury from learning that Exhibits 001 and 008, when attached with Exhibits 001A and 008A, did not consistently fire rounds of ammunition automatically. ECF. No. 160, Def. Resp. to Gov't Mo. to Exclude, at 1-2. Indeed, the Government expects Ms. Eisenbise to detail for the jury her examination of the firearms and conversion devices as outline in her report. *See* Ex. A, Eisenbise

1

Report.[1]  Her examination includes the test firing demonstration she undertook of Exhibits 001 and 008 with 001A and 008A attached.  *Id.* at 4, 7.  Thus, the jury will learn about the test firing results and will be able to draw their own conclusion about those results.  Thus, any testimony from Mr. Luettke reiterating the fact that the firearms did not test fire reliably is cumulative and unhelpful to the jury under FRE 403 and 702.

What the Government seeks to exclude—as irrelevant under FRE 401, unhelpful for the jury under FRE 702, and based on an unreliable principle of firearm examination and classification under FRE 702—is testimony from Mr. Luettke drawing conclusions that Exhibits 001A and 008A did not constitute machinegun conversion devices under 26 U.S.C. § 5845(b) because the firearms they were attached to did not consistently test fire automatically.  As detailed in the Government's opening motion, the statutory definition does not require that the device fire reliably.  *See* 26 U.S.C. § 5845(b).  What matters is whether the weapon "is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" or if the parts were "designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun. . . ."  *Id.*

In *United States v. Barker*, the defendant's firearm did not fire when initially obtained by law enforcement.  245 F. App'x 556, 557 (7th Cir. 2007).  An ATF agent had to lubricate it with oil for it to shoot.  *Id.*  The defendant argued that because the firearm could not shoot in the condition in which police found it that it should not have been considered a machinegun for purposes of 18 U.S.C. § 924(c)(1)(B).  *Id.*  The Seventh Circuit rejected this argument stating that "[a]s the district court aptly observed, 'a machine gun that needs lubrication to function as it was designed to function is no less a machinegun than a squeaky hinge is anything other than a hinge.'  Indeed, even

---

[1] On March 25, 2025, The Government provided the Defendant with an updated expert disclosure for Ms. Eisenbise.  *See* attached at Ex. G.  Ms. Eisenbise did not write a supplemental report.

an inoperable machinegun is still a "machinegun" for purposes of § 924(c)(1)." *Id.* The court then cited a litany of case law from various circuits holding the same. *See United States v. Pena-Lora*, 225 F.3d 17, 31, 32 (1st Cir.2000) (affirming defendant's conviction and sentence under § 924(c) where machinegun was damaged or clogged and could not fire without repair); *United States v. Moore*, 919 F.2d 1471, 1475-76 (10th Cir. 1990) (rejecting argument that defendant could not be convicted under § 924(c) because his Sten machinegun was inoperable); *United States v. Castillo*, 406 F.3d 806, 817 n. 3 (7th Cir.2005) ("There is no prerequisite that the gun be operable to be a "firearm" under 18 U.S.C. § 924(c).").

The test fire results simply show that the devices did not consistently function properly (an uncontroversial reality that Ms. Eisenbise will explore), ***not*** that they weren't designed to convert the firearms into automatic weapons. A test fire may be a reliable method to determine whether a device is a machinegun conversion device, if there is a successful test fire (as there was in this case). But the absence of a successful test fire is not dispositive of whether a weapon or device is a machinegun, given the multi-pronged definition of a machinegun, which includes a weapon that "is *designed to shoot*, or *can be readily restored to shoot*, automatically more than one shot, without manual reloading, by a single function of the trigger" or if the parts were "*designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun. . . .*" 26 U.S.C. § 5845(b) (emphasis added). As discussed further below, Mr. Luettke's failure to address this renders his opinion fatally lacking in a reliable application of reliable principles. Finally, Mr. Luettke did not engage in his own test firing to support his conclusion so any testimony about test firing will only be duplicative of Ms. Eisenbise.

3

### B. Mr. Luettke Did Not Reliably Apply Reliable Principles to the Facts of this Case

Federal Rule of Evidence 702 requires the Court to not only make a threshold determination of whether an expert's testimony is based on "reliable principles and methods" but also that those reliable principles and methods were "reliably applied" to the facts of the case. *See* Fed. R. Evid. 702(c), 702(d); *see also United States ex rel. Fitzer v. Allergan, Inc.*, No. 1:17-CV-00668-SAG, 2024 WL 2881236, at *2 (D. Md. May 28, 2024) ("The court's analysis focuses on experts' methods, not their conclusions, but an expert opinion that relies on 'assumptions which are speculative and are not supported by the record,' is inadmissible.")

In its opening motion, the Government argued how Mr. Luettke unjustifiably offered an *ipso facto* conclusion without analysis. *See* ECF No. 159, Gov't Mo. to Exclude at 9-10. Mr. Luettke measured a less than 0.1-inch size difference between the device exhibits and his own machinegun conversion device and concluded that the exhibits are not machineguns as defined by 26 U.S.C. § 5845(b). Even if we accept that Mr. Luettke's measuring and comparing is a reliable method, his report does not explain, analyze, or explore ***how*** the less than 0.1-inch difference means the devices were not designed or intended to convert a firearm into an automatic weapon.[2]

In response to the Government's motion, defense counsel, in briefing, tried to conduct that missing analysis by noting how the size difference matters and "may be the difference" of whether a firearm fires automatically or not. *See* ECF No. 160 at 3. However, none of defense counsel's explanation is in Mr. Luettke's report and it still fails to connect how the less than 0.1 size difference in this case means the devices were not designed to convert the firearms into automatic weapons. Mr. Luettke's conclusion that the firearms were not designed to shoot or could not be

---

[2] In comparison, Ms. Eisenbise examined the devices, analyzed them against the U.S. Patent, detailed in her report how the device "leg" was designed to depress the trigger for automatic expulsion, conducted a test fire, then concluded that the devices met the statutory definition. *See* Ex. A, Eisenbise Report.

4

be readily restored to shoot automatically, or that the machinegun conversion devices were not intended to convert a firearm into a machinegun, is particularly preposterous since Mr. Luettke acknowledged that Exhibit 001 with Exhibit 001A installed did fire automatically, albeit unreliably. Indeed, the defense does not offer any countervailing theory of what Exhibits 001A and 008A were designed to do if not convert firearms into automatic weapons. Exhibit 008A being too narrow does not mean it was not designed to convert firearms. In a similar context, a machinegun conversion device for an assault rifle would presumably not fit into a Glock pistol, but that does not mean the device is not a machinegun conversion device under the statute.

***

The Defendant is free to cross examine Ms. Eisenbise on any aspect of her examination, report, and testimony and the Government welcomes him to do so. Mr. Luettke is not necessary for that endeavor. As described above and in the Government's, Mr. Luettke's own conclusions are not based on a reliable application of reliable principles, and should be excluded under Rules 401, 403, and 702.

The Court should grant the Government's motion to exclude the testimony of Mr. Brian Luettke.

                    Respectfully submitted,

                    Kelly O. Hayes
                    United States Attorney

By:      /s/
                    Brooke Oki
                    Patrick Kibbe
                    Assistant United States Attorneys